

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| TYREESE R. THOMPSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD76794 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | September 9, 2014 |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri
The Honorable Patrick K. Robb, Judge**

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

Tyreese Thompson appeals the denial, without an evidentiary hearing, of his Rule 24.035[1] motion for post-conviction relief. Thompson claims that his plea counsel provided ineffective assistance by failing to investigate and seek to suppress evidence discovered as a result of Thompson's allegedly illegal seizure. Thompson further claims that counsel also failed to advise Thompson of the possibility of suppression; thus, Thompson's plea was rendered involuntary and unknowing. The State argues that Thompson waived his claims when Thompson entered a voluntary and knowing guilty plea. We affirm.

---

[1] All rule references are to the Missouri Court Rules 2013, unless otherwise noted.

## Factual Background

On May 6, 2011, Thompson was riding in a maroon GMC Sonoma driven by Caci Clizer and owned by Clizer's father. They stopped at Speedy's Convenience Store in St. Joseph, Missouri, so that Thompson could purchase some soda. Clizer parked the car facing the store, so that the only manner of egress was to put the car in reverse. After Thompson exited the store, Clizer asked him to drive. At the same time, law enforcement officers Zack Craft and Brett Coy were dispatched to Speedy's to investigate a possible drunk driver. An unidentified caller had advised that a woman driving a maroon GMC Sonoma may be intoxicated and could be found at Speedy's. After Thompson sat in the driver's seat and prepared to start the car, he noticed a police cruiser with its emergency lights on parked behind him, blocking his exit. An officer approached the driver's side of the vehicle and asked for Thompson's license and registration. Thompson advised the officer that his license was suspended.

The officer then had Thompson move to the passenger seat and had Clizer exit the vehicle in order to perform a field sobriety test, which she ultimately passed, suggesting that she was not intoxicated. The officer then sought and received permission from Clizer to search the vehicle. The officer found both marijuana and a large amount of currency in the car, and both Thompson and Clizer were arrested.

Thompson was later charged with the class B felony of possession of a controlled substance (specifically more than five grams of marijuana) with intent to distribute, in violation of section 195.211.[2] Thompson entered a plea agreement with the State whereby, in exchange for Thompson's guilty pleas to the charge arising from the search described above and two other

---

[2] All statutory references are to the Missouri Revised Statutes 2000, as updated through the 2010 Cumulative Supplement, unless otherwise noted.

drug charges arising from a separate case,[3] the State agreed not to seek enhancement based upon Thompson's prior felony record and to recommend concurrent sentences on all charges as well as those for which Thompson was already serving time.

Thompson submitted plea petitions to the court for both cases[4] in which he acknowledged the nature of the charges against him, as well as the corresponding ranges of punishment. Thompson claimed that he "told [his] lawyer all the facts and circumstances known to [him] about the charges made against [him] in the information." Thompson further acknowledged his understanding that he did not have to plead guilty, and that by pleading guilty, he was waiving:

> (a) the right to a trial by jury[,] (b) the right to see and hear all witnesses called to testify against [him] and to cross-examine all witnesses[,] (c) the right to use the power of the court to compel the production of any evidence, including the attendance of any witnesses in [his] favor[,] (d) the right to have the assistance of counsel during the trial, and (e) the right to take the witness stand at [his] sole option and if [he did] not take the witness stand no inference of guilt may be drawn from such failure.

Thompson denied the existence of any threats or promises made against or to him or his family members in order to induce his plea. He then declared:

> My lawyer has counseled and advised me on the nature of each charge, on all lesser included charges, if any, and on all possible defenses that I might have in this case.

> I am satisfied with the advice and help provided to me by my attorney and there is nothing more I want him or her to do before I enter my plea of guilty.

The petition closed with the following assertion: "I offer my plea of guilty freely and voluntarily and with full understanding of all the matters set forth in the information and in this petition."

---

[3] The separate drug charges arose when a car that Thompson was riding in got pulled over for a broken brake light. As part of the stop, Thompson was asked to step out of the car. After doing so, Thompson fled from the police officer. While he was running, he threw more than five grams of marijuana on the ground. He was subsequently caught and arrested, and during a search incident to arrest, cocaine was also discovered in his pocket.

[4] The plea petition for the marijuana possession case was not included in the legal file. We presume it contained the same information as the petition for the other drug charges that was included.

3

At the plea hearing, Thompson reiterated his understanding of his rights as outlined in the plea petitions and that he was waiving them by pleading guilty. Thompson again denied the existence of any promises or threats, apart from the plea agreement he entered with the State. Thompson indicated that he was satisfied with plea counsel's representation and that there was nothing more he wanted plea counsel to do for him before entering his guilty pleas. Thompson advised the court that it was his decision to plead guilty and that he was doing so because he was, in fact, guilty of the charges. The court accepted Thompson's pleas, finding that they were entered knowingly and voluntarily. The court then sentenced Thompson in accordance with the terms of the plea agreement to concurrent seven-year terms of imprisonment on each charge.

Thompson thereafter filed pro se Rule 24.035 motions for each drug case.[5] Appointed counsel filed an amended motion, alleging (among other claims) that plea counsel provided ineffective assistance by failing to investigate and file a motion to suppress evidence seized as a result of the search of the maroon GMC Sonoma on May 6, 2011. Specifically, the amended motion alleged that the officer's action of parking the police cruiser with active emergency lights behind the Sonoma, blocking its exit, constituted an illegal seizure, and that everything that followed (including the search that led to the marijuana forming the basis for the charge) was fruit of the poisonous tree. The amended motion alleged that plea counsel failed not only to investigate the suppression issue but also to advise Thompson of the possibility of seeking suppression. Thompson claimed that, had he known he had a valid ground for suppression, he would not have pled guilty, but would have sought a trial.[6]

---

[5] These cases were consolidated for purposes of post-conviction relief.

[6] The motion also sought to vacate Thompson's plea of guilty on the two unrelated drug charges on the ground that, had he known he was facing only the two charges rather than three (assuming the first would have been dismissed upon suppression of the State's evidence), he would not have pled guilty, but would have gone to trial. Thompson makes no argument that the evidence related to these other crimes was inadmissible or any claim that counsel's advice to plead guilty to these offenses was ineffective.

4

The motion court denied Thompson's motion without an evidentiary hearing, finding that Thompson failed to allege facts that, if true, would warrant relief and that Thompson's claims were refuted by the record. Thompson appeals.

## Standard of Review

Appellate review of the motion court's denial of a Rule 24.035 motion is "limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 24.035(k). We presume that the motion court's findings are correct; thus, the appellant bears the burden of demonstrating clear error. *Baumruk v. State*, 364 S.W.3d 518, 525 (Mo. banc 2012). "'The [motion] court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression a mistake has been made.'" *Scott v. State*, 414 S.W.3d 57, 60 (Mo. App. W.D. 2013) (quoting *Scarborough v. State*, 363 S.W.3d 401, 404 (Mo. App. S.D. 2012)).

## Analysis

Thompson raises four points on appeal, all related to plea counsel's alleged failure to investigate, advise Thompson about, and seek suppression of evidence due to an allegedly illegal seizure. The State argues in response to all claims that Thompson waived his right to challenge the admissibility of the State's evidence when he voluntarily and knowingly entered his guilty pleas. Thompson argues that his pleas did not result in waiver insofar as Thompson was *unaware* that the circumstances of his seizure would have supported legal grounds for suppression. He claims that his lack of awareness rendered his subsequent pleas involuntary and unknowing. But because Thompson failed to allege sufficient facts to entitle him to relief, we affirm the motion court's decision to overrule Thompson's motion without an evidentiary hearing.

5

"A post-conviction movant is entitled to an evidentiary hearing only if: (1) he alleges facts that, if true, would warrant relief; (2) the allegations are not refuted by the record; and (3) the movant was prejudiced by the alleged errors." *Id*. "A hearing is not required if the court determines that 'the motion and the files and records of the case conclusively show that the movant is entitled to no relief.'" *Id*. (quoting Rule 24.035(h)).

Here, the motion court found that Thompson was not entitled to an evidentiary hearing because he failed to allege facts that, if true, would warrant relief and because his allegations were refuted by the record. These findings are not clearly erroneous.

"A conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged." *McMann v. Richardson*, 397 U.S. 759, 766 (1970). "That admission may not be compelled, and since the plea is also a waiver of trial—and . . . *a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant*—it must be an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences.'" *Id*. (quoting *Brady v. U.S.*, 397 U.S. 742, 748 (1970)) (emphasis added). And "when the defendant . . . admits his guilt, . . . he assumes the risk o[f] ordinary error in either his or his attorney's assessment of the law and facts." *Id*. at 774. Put simply, "a plea of guilty . . . is not subject to collateral attack . . . on the ground that it was motivated by [inadmissible evidence] unless the defendant was incompetently advised by his attorney." *Id*. at 772.

Rather than argue that plea counsel provided *incompetent* advice *regarding whether Thompson should plead guilty*, Thompson argues that plea counsel provided *no* advice *regarding the potential for suppression*, that counsel thereby provided ineffective assistance, and that

counsel's failure rendered his subsequent plea unknowing and involuntary.[7]  Because Thompson has couched his claim as one of ineffective assistance of counsel, it is subject to the two-prong *Strickland* inquiry.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id*.  To demonstrate deficient performance, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  And to demonstrate prejudice, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id*.  In the context of a guilty plea, this generally requires that the defendant demonstrate that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

To be entitled to relief on his claim of ineffective assistance, premised on counsel's failure to advise him of a potentially valid attack on the State's case, Thompson had to establish, at a minimum, not only the unconstitutionality of the seizure but also "that *his attorney's advice to plead guilty* without having made inquiry into the [alleged unconstitutional seizure] rendered that advice outside the 'range of competence demanded of attorneys in criminal cases.'" *Tollett v. Henderson*, 411 U.S. 258, 268 (1973) (emphasis added).  In other words, whether the State's

---

[7] Because we find that Thompson failed to sufficiently allege a claim of ineffective assistance of counsel, we need not address whether counsel's alleged deficiencies rendered his plea unknowing and involuntary.

case rests in any part on potentially suppressible evidence is not counsel's only concern when advising a client whether to enter a guilty plea.

> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement . . . might be factually supported.

*Id*. at 267-68 (internal citations omitted). "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo v. Moore*, 131 S.Ct. 733, 741 (2011).

> The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Id*. Thus, a defendant seeking to establish that plea counsel was ineffective in advising the defendant to plead guilty must show that the advice to plead guilty itself, in light of all the various considerations, was incompetent. "The stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence." *Id*. at 744. But "[a] defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence." *Id*.

8

Here, Thompson has simply failed to allege that counsel's advice to plead guilty was incompetent in light of all of the risks and opportunities facing Thompson at the time. Rather than suggest that plea counsel's consideration of factors other than the ability to seek suppression were insufficient to warrant the advice to plead guilty, Thompson focused only on whether counsel's failure to advise him *about the potential for suppression* was incompetent. But there were other considerations suggesting the advisability of a guilty plea pursuant to a plea agreement. Under the plea agreement, Thompson not only received a favorable disposition (concurrent sentences on all charges together—including the two other drug charges arising from a separate case for which there appears to be no valid basis for suppression of evidence—and a robbery charge already being served) but also avoided sentence enhancement based upon his prior felony record. In addition, Thompson was set to go to trial the following day on the unrelated two-count drug case. Thus, the reasonable inference is that had Thompson not accepted the combined deal at that time, the opportunity would not have been available in the future. These are valid considerations suggesting that entering a guilty plea was likely in Thompson's best interest. And his motion wholly failed to allege otherwise. In short, Thompson's failure to plead facts demonstrating that counsel's *advice to plead guilty* under these circumstances was incompetent is fatal to his claim.

"Counsel's actions are presumed competent," *Lyons v. State*, 39 S.W.3d 32, 36 (Mo. banc 2001), and where a post-conviction movant fails to allege facts to overcome that presumption, he is not entitled to an evidentiary hearing. *See George v. State*, 403 S.W.3d 709, 711 (Mo. App. W.D. 2013). Here, Thompson simply failed to plead that counsel's advice regarding whether to plead guilty was in any way incompetent. The record suggests the contrary and, in fact, supports

9

the presumption of competence. Accordingly, the motion court committed no error in overruling Thompson's motion without an evidentiary hearing.

All of Thompson's points on appeal are denied.

## Conclusion

The motion court did not clearly err in overruling Thompson's Rule 24.035 motion. Its judgment is affirmed.

_____
Karen King Mitchell, Judge

Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick, Judge, concur.

10